UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFERSON JONATHAN TIGRERO
MORA (A-220-205-299),

               Petitioner,

     v.

WARDEN CHRISTOPHER CHESTNUT,

               Respondent.

No. 2:26-cv-00626 DJC CSK

ORDER AND FINDINGS AND
RECOMMENDATIONS

Petitioner Jefferson Jonathan Tigrero Mora (A-220-205-299), a native of Ecuador who is proceeding without counsel, entered the United States in May 2021 and has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was initially detained by immigration officials inside the United States and released in June 2021. On January 10, 2026, petitioner was arrested and re-detained by U.S. Immigration and Customs Enforcement ("ICE") and has been in continuous detention since this date. This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

---

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.    FACTUAL BACKGROUND[2]

Petitioner entered the United States in May 2021.  (ECF No. 1 at 6.)  He encountered immigration officials in the Hidalgo, Texas Border Patrol area on June 11, 2021, was detained and then released into the United States on June 12, 2021 with a Notice to Appear in INA Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings that are distinct and different from expedited removal proceedings pursuant to INA § 235(b)(1) (8 U.S.C. § 1225(b)(1)).  (See ECF No. 11-1 at 3; ECF No. 11-2 at 2.)  In addition, the Notice to Appear does not allege petitioner is an "arriving alien," though the Notice does include a place to designate this information.  (Id.)  On January 10, 2026, petitioner was a passenger in a vehicle involved in a car crash, and subsequently re-detained by ICE and has been in continuous detention since that time.  (ECF No. 1 at 4, 6.)  Petitioner's next court date for his immigration case is July 2027.  (Id. at 6.)  Petitioner has a work permit, Social Security number and a driver's license.  (Id.)  Petitioner has no criminal history (ECF No. 11-1 at 3.)  Respondents do not contest petitioner's factual allegations.  (See ECF No. 9.)

## II.    PROCEDURAL BACKGROUND

On February 27, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  Petitioner filed an application to proceed in forma pauperis.  Examination of the affidavit reveals petitioner is unable to afford the costs of this action.  Accordingly, leave to proceed in forma pauperis is granted.  28 U.S.C. § 1915(a).

On March 3, 2026, the district judge referred this matter to the undersigned.  (ECF No. 4.)  On March 6, 2026, respondents were ordered to file an answer or motion to dismiss within seven days.  (ECF No. 5.)  Respondents failed to respond, and the Court notified respondents of their failure and provided another opportunity for their response.  (ECF No. 8.)  On March 20, 2026, respondents filed a response.  (ECF No. 9.)  Because the record did not include sufficient information to determine the issues presented in the pending petition, the Court ordered

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 8.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)). Respondents do not contest petitioner's factual allegations.  (See ECF No. 9.)

respondents to submit any and all Notice(s) to Appear, release orders, supervision orders, and detention orders, and Respondents submitted responsive documents. (ECF No. 10.) Respondents failed, however, to serve petitioner, who is proceeding pro se, with either their response to the petition or their documents until the Court identified the error and ordered respondents to serve petitioner by April 17, 2026. (ECF Nos. 12-14.) Respondents' repeated failures have delayed resolution of this habeas petition. Petitioner did not file a reply to respondents' response. (See Docket.) Briefing is now complete.

**III.    LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**IV.    DISCUSSION**

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes the petition challenging his re-detention as unfair and seeking release to raise a Fifth Amendment procedural due process claim and to raise a statutory claim under the INA. In their response to the petition, respondents appear to have construed the petition to raise three claims: (1) a statutory claim under the Immigration and Nationality Act ("INA"); (2) a Fifth Amendment procedural due process claim;

and (3) a Fifth Amendment substantive due process clause.  (See ECF No. 9 at 2-7.)  Therefore, there is no prejudice to respondents in the Court's construction.  (See ECF No. 9.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that petitioner is not entitled to a pre-deprivation bond hearing because as an "applicant for admission" petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(1)(A)(iii)(II), and therefore his due process claims also fail.  (ECF No. 9 at 2-7.)  Respondents concede that petitioner has no criminal history.  (See ECF No. 11-1 at 3 ("Tigrero-Mora has no criminal history.").)

### A.    Statutory Claim

The first issue here is whether petitioner, who has lived in the United States since May 2021, is subject to discretionary release, or whether petitioner is now subject to mandatory detention under 8 U.S.C. § 1225(b)(1) expedited removal, as respondents argue.  Respondents argue that "Petitioner is subject to mandatory detention under § 1225(b)(1), not § 1225(b)(2)(A)" because petitioner is subject to expedited removal proceedings.  (ECF No. 9 at 3.)

Under immigration law, there are two different proceedings for removing noncitizens: standard removal proceedings pursuant to INA Section 240, 8 U.S.C § 1229a, or expedited removal proceedings pursuant to INA Section 235(b)(1), 8 U.S.C § 1225(b)(1).  Coal. for Humane Immigrant Rts. v. Noem, 805 F. Supp. 3d 48, 58-59 (D.D.C. 2025).  The standard "removal process provides for an evidentiary hearing before an immigration judge to allow the noncitizen to show she should not be removed."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020)).  Section 1229a does not provide detention authority for noncitizens in standard removal proceedings, and respondents do not contend otherwise.  See 8 U.S.C. § 1229a.

Expedited removal is a streamlined process for deporting a noncitizen with fewer due process protections than standard removal under 8 U.S.C. § 1229a (INA Section 240).  See, e.g., 8 C.F.R. §§ 208.30, 235.3(b).  "[O]nly two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been

4

'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'" Coal. for Humane Immigrant Rts., 805 F. Supp. 3d at 61 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)-(iii)).

There are multiple problems with Respondents' expedited removal argument. First, the government's own records establish that Petitioner was placed in standard removal proceedings pursuant to INA Section 240, 8 U.S.C § 1229a, not expedited removal proceedings. On June 12, 2021, Petitioner was issued a Notice to Appear and placed in standard removal proceedings pursuant to INA Section 240, 8 U.S.C § 1229a. (ECF No. 11-2 at 2.) The Notice to Appear also does not allege petitioner is an "arriving alien," though the Notice does include a place to designate this information. (Id.)

Second, petitioner does not fall into one of the categories for expedited removal. Respondents do not contend that petitioner is arriving into the United States, nor could they so contend. See ECF No. 9; see also 8 C.F.R. § 1.2 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means…"); 8 C.F.R. § 235.3(b)(i). In addition, petitioner entered the United States in May 2021, over 4.5 years before his January 2026 re-detention. As several courts in this district have held, 8 U.S.C. § 1225(b)(1)(A)(iii)(II) cannot be properly read to provide for detention and removal of aliens previously admitted into the United States or who have been present in the United States for the two years prior. See Cuero v. Bondi, 2026 WL 799940, at *1 (E.D. Cal. Mar. 23, 2026) (Section 1225(b)(1)(A)(iii)(II) did not apply to petitioner paroled into the United States); Espinoza v. Kaiser, 2025 WL 2581185, at *5 (E.D. Cal. Sept. 5, 2025); Marcos B.D.S. v. Warden of Mesa Verde Det. Facility, 2026 WL 82344, at *3 (E.D. Cal. Jan. 12, 2026); Duong v. Charles, 2025 WL 3187313, at *4 (E.D. Cal. Nov. 14, 2025).

This Court concludes that petitioner is not subject to expedited removal pursuant to § 1225(b)(1), and that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner entered and was released into the United States in 2021, he has

resided in this country for over 4.5 years and petitioner's January 2026 arrest and re-detention were not upon his arrival to the United States. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release. Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). As such, petitioner should have been provided a bond hearing before his re-detention and is entitled to relief on his statutory claim.

### B.    Due Process Claim

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due

process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release in June 2021 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 4.5 years.  Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.  Petitioner has a work permit, Social Security number and driver's license.  (ECF No. 1 at 6.)  This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a

danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4. This Court concludes that petitioner has a protected liberty interest in his release. See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing

8

Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 4.5 years, petitioner was free from custody before his re-detention.  Petitioner had a work permit, Social Security card and driver's license.  (ECF No. 1 at 6.)   The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF No. 9.)  In addition, petitioner does not have a criminal record.[3]  (See id.; ECF No. 11-1 at 3.)

Here, petitioner has been detained since January 10, 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter has determined whether petitioner is a flight risk or a danger to

---

[3] Petitioner claims that he was unfairly arrested, apparently by the Long Island Police Department, when his friend caused a car crash on the freeway. (ECF No. 1 at 6.)  Petitioner claims that he was arrested because he was a passenger in the vehicle. (Id.)  Petitioner was then taken into ICE custody. (Id.)  Respondents do not claim that petitioner was charged with any crime based on his arrest.  (See ECF No. 9.)

9

the community.  Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose.  See Zadvydas, 533 U.S. at 690;  see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over 4.5 years on release and he has no criminal record.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus,

"a pre-deprivation hearing is required to satisfy due process." <u>Guillermo M. R. v. Kaiser</u>, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on his due process claim.

**V.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that petitioner's motion to proceed in forma pauperis (ECF No. 7) is granted.

Further, in summary, the Court recommends that the petition for writ of habeas corpus be granted on two separate grounds: (1) petitioner's statutory claim, and (2) petitioner's due process claim.

IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondents be ordered to IMMEDIATELY release petitioner Jefferson Jonathan Tigrero Mora (A-220-205-299) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

3.  Given petitioner's pro se status, respondents be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.

4.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 30, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/Mora626.imm.rel/2

12